# E̲conomic C̲onsulting
### Since 1985

PO Box 260960
Corpus Christi, Texas 78426
www.economicconsulting.com
Tel. 361.883.1686

<u>Senior Economist</u>
Stephen M. Horner, PhD
smh@economicconsulting.com

<u>Associate Economist</u>
Michele Angerstein-Gaines, MBA
mda@economicconsulting.com

November 24, 2023

Ms. Carra Miller
Mr. Thomas Deen
Schouest Bamdas Soshea BenMaier & Eastham
807 North Upper Broadway, Suite 201
Corpus Christi, Texas 78401

RE:   CA No. 4:43-cv-770; Crosby Marine Transportation, LLC v. Southwest Shipyard, LP; in the U.S. District Court for the Southern District of Texas, Houston Division

Dear Ms. Miller and Mr. Deen,

    You have asked us to review records provided[1] in this matter, and provide you our[2] preliminary expert opinion regarding the economic losses, sustained by Crosby Marine Transportation, LLC, as a result of a fire that occurred aboard the M/V Crosby Enterprise on August 12, 2022, while undergoing work in the shipyard operated by Southwest Shipyard, LP.

    You have also asked us to comment on the November 13, 2023, economic analysis provided by J.P. Quackenbos, Jr., Principal, of QUBED Limited, L.C. (We will refer to "QUBED," or "Mr. Quackenbos," interchangeably, in this report.) It should be noted that I am not a marine surveyor or appraiser, and will only indirectly address the value of the vessel as it may be relevant to economic analysis. My opinions, provided in this letter-report, are based on my education, and experience, outlined in attachments to this letter-report as well as the materials listed in Attachment A, below.

    As you are aware, very little time was available for this project, as we received materials to be reviewed, such as they are, only 8 days ago. As you are also aware, Crosby Marine Transportation, LLC ("Crosby") has not produced information that was provided to QUBED. Furthermore, Crosby has refused to produce necessary documents requested in Requests for Production. As you will see below, financial statements and tax returns for Crosby, at least for the last 5 years, are needed to perform the requested analysis. In addition, monthly detailed profit and loss statements for each of the vessels whose performance is deemed relevant by Crosby should also be produced as soon as possible. That Crosby's expert has some of this data that has not been produced to Southwest is not a situation I have encountered in Federal cases in the past, as I have been told that such documents must be produced, even without a formal

---

[1] See Appendix A
[2] Ms. Michele Gaines, MBA, aided in the preparation of this report.

# Exhibit A

request.  This is based on my experience.  I am not an attorney, and do not presume to tell the Court or attorneys how to conduct their respective duties.

Summary of Preliminary Observations on the QUBED Report by J.P. Quackenbos

The following comments are preliminary and subject to change as additional information becomes available.

1. Information considered (page 2):  We do not have some of these documents.  No notes from these communications have been produced.  Item 8 is not well-specified.  Item 9 is not well-specified.  Mr. Quackenbos criticizes the Sabine report as not benefiting from possession of "financial performance data from the Plaintiff, to which [he] was privy."  He is speaking about fleet performance data that Mr. Quackenbos' client withheld as being irrelevant to their claims.  This contradiction is not explained. Furthermore, Mr. Quackenbos' data is insufficient.  Thirteen months is a very short period of time, when one is attempting to determine a valuation for a long-lived asset such as a towing vessel.  Although Mr. Quackenbos does not commit to a specific period of time over which his estimate of monthly loss would apply, his report suggests that it will be long.  Mr. Quackenbos claims in multiple places that the industry had improved.  This should be demonstrated in *monthly* profit and loss statements for 2017 through 2022 for each of the vessels Mr. Quackenbos believes to be relevant to his analysis.  Without such basic information, Mr. Quackenbos' analysis is unreliable.
2. "Quoted repairs never commenced."  Why not?  Why is Crosby not mitigating its alleged lost profit of $115,000 per month?  If Crosby were able to "maintain robust financial fortitude," why has Crosby not caused the repairs to commence?
3. Methodology Questions and Issues
    a. We have not been given information regarding the "unsettled insurance claims." Since there are 3 of these that occurred in the 13-month period, for 12 vessels, with 1,652 working days (after adjustments), it is important to know how many days are normally lost to such claims, which QUBED removes from consideration. The objective in this exercise is to project the likely financial performance of the M/V Crosby Enterprise, had the fire not occurred. Consideration must be given to all events that have a reasonable probability of impacting that performance.
    b. Historical period "refurbishments understood to be customarily capitalized in order to gain true operation costs per vessel" are replaced by "Capital Maintenance" figures that are provided without attribution.  Documentation should have been provided.
    c. It is not clear why QUBED analyzed 13 months (using 2 sets of June data).  Using 13 months complicates their analysis, requiring a number of additional renormalization steps in their utilization and financial performance analysis.  No reason was given for the implicit assumption June should be considered twice as important as any other month?  Utilization for June 2022, as adjusted for "available days" by QUBED, was significantly higher than for any other month.

       The number of lost days for the Endeavor was given as 31, but, as usual, there were only 30 days in June 2022.

   d. QUBED analyzed days of utilization, implicitly assuming that days in a shipyard would have been replaced by average utilization. The validity of this assumption is subject to question.

   e. The sources for figures for the following categories were not given:
       i. Repairs and maintenance
       ii. Capital Maintenance
       iii. Claim deductions
       iv. Groceries
       v. Insurance

   f. There are no fuel or lubrication expenses provided. Because Crosby has declined to produce financial information, it is not possible to determine whether these necessary variable expenses were mislabeled, or included in some other category.

   g. Mr. Quackenbos' analysis is based on assumptions about Crosby's financial strength, but rather than basing this on a review of Crosby's financial statements, he merely assumes that Crosby will "maintain robust financial fortitude." "Robust financial fortitude" is not defined in the QUBED report. Even if we had a definition, given Crosby's refusal to provide financial information, there is no way to know if QUBED's analysis fits the actual financial circumstances of Crosby.

   h. QUBED assumes the relevance of interest rates that might or might not apply to Crosby. Mr. Quackenbos' implicit assumption is that Crosby's cost of capital is very low, as might be applicable to companies with very strong financial statements, very high credit ratings, and relatively low volatility. There are fundamental reasons to suspect that Crosby might not fit this description. Highly capital-intensive industries, such as marine vessel operators, are particularly subject to both profit and cash flow problems during industry downturns when revenues decline, but much of their cash outflow is fixed, and capital costs remain. Provision of financial statements and tax returns are needed to address these issues.

At this point, we turn to two fundamental sections of the QUBED report. The discussion follows the text of their report closely. Where there are no comments given, it should not be assumed that I will not have comments as discovery and further analysis continues. Upon receipt of additional information, this report will be supplemented as may be appropriate at the time.

Entries in quotations below have been copied verbatim from the QUBED report of November 13, 2023. My comments follow each quoted passage.

**"Information Considered by QUBED In Formation Of This Report and Opinion**

1. "Qubed Limited L.C. Report No. 22-0819-CTI-02 dated August 17, 2022." <u>This report has not been provided to us.</u>

2. "Qubed Limited L.C. Report No. 22-1003-CTI-02 dated October 6, 2022." <u>We have been provided this document.</u>

3. "My observations made during surveys aboard M/V 'CROSBY ENTERPRISE' ("Vessel")." <u>This appears to refer to notes taken during the surveys. We have not been provided such notes.</u>

4. "My recollection of communications by employees of Southwest Shipyard, LP ("Defendant") and its Surveyor, Mr. Robert Reider of Earl Hatfield Marine Surveyors & Ultrasonic Gauging (collectively "Hatfield") during surveys aboard the Vessel and a meeting following survey on August 16, 2022." <u>It is of concern that this refers to Mr. Quackenbos' "recollections." There is no list of the communications and no notes made by Mr. Quackenbos at the time of the surveys or the meeting of August 16, 2022. No letters, emails, or other communications have been provided to us.</u>

5. "Plaintiff's Rule 26 Initial Disclosures." <u>We have been provided these disclosures.</u>

6. "Defendant's Rule 26 Initial Disclosures." <u>We have been provided these disclosures.</u>

7. "Deposition testimony by Mr. Scott Joseph Theriot provided on July 26, 2023." <u>We have been provided the deposition of Mr. Theriot, with attached exhibits.</u>

8. "Financial and utilization performance data relating to certain tugboats understood to be owned and operated by the Plaintiff for the period spanning June 2022 to June 2023." <u>In this report, Mr. Quackenbos opined that the Sabine report was defective, at least partially because Sabine did not have access to these documents. It is our understanding that these documents should have been produced, as a subset of five years of financial documents subject to Requests for Disclosure.[3] We have not been provided these documents, as Plaintiff has responded that the documents are not relevant. Clearly, the documents, if they actually exist and accurately reflect the performance of Crosby's vessels, are relevant, at the very least to Crosby's expert witness, and should be produced in time to allow proper analysis. If some or all of these documents do not exist, or are not accurate, Crosby should disclose such facts.[4]</u>

9. "Various information available via the public domain." (Sic) <u>This disclosure is meaningless.</u>

---

[3] See Plaintiff Crosby Marine Transportation, LLC's Answers And Objections To The First Requests For Production Propounded By Defendant Southwest Shipyard, LP, response to request number 26.

[4] Similarly, Request for Production No. 31, requested Crosby tax returns for 2017 through 2022, and Crosby responded that these documents are not relevant. Mr. Quackenbos makes assertions and assumptions about improvement in the market for towing vessels, as well as the "robust" financial performance of Crosby. These statements, if true, would likely be supported by Crosby's tax returns for the years requested. If Crosby maintains that the tax returns were not prepared accurately or are otherwise not reliable, then they may not be relevant. Nevertheless, they should be produced to Defendants, that their relevancy can be ascertained.

**Methodology**

1. "Review of the Information Considered In Formation Of This Report and Opinion."
    a. As noted above, not all of the documents and sources are produced.
    b. Some of the documents and sources are not identified.
    c. Southwest Shipyards asked for 5 years of financial performance data for the Crosby fleet in Request for Production No. 26. Crosby's response claims that financial performance documents used by Mr. Quackenbos are irrelevant.
2. "Evaluated actual historical performance data of twelve (12) vessels, ranging from marketed 6,000 Horsepower ("HP") to 16,500 HP, operated by the Plaintiff for the thirteen (13) months spanning June 2022 thru June 2023 ("Evaluation Period")."
    a. The source documents used by Mr. Quackenbos that is the basis for his evaluation of the actual historical performance of the twelve vessels were not provided. Southwest Shipyards asked for 5 years of financial performance data for the Crosby fleet in Request for Production No. 26. Crosby's response claims that financial performance documents used by Mr. Quackenbos are irrelevant.
    b. The QUBED report does not disclose how the 12 vessels were selected.
    c. The QUBED report does not disclose how the 13-month "Evaluation Period" was chosen. The fire occurred in August 2022.
    d. The QUBED report does not disclose the basis for choosing June 2022 through June 2023, 13 months of operations, to analyze, including two sets of June data.
    e. No reason was given for the implicit assumption that June should be considered twice as important as any other month.
3. "Removed known unsettled insurance claim costs and/or refurbishments understood to be customarily capitalized in order to gain true operational costs per vessel."
    a. On page 18 of the QUBED report, an annual Capital Maintenance allowance figure was subtracted, instead of actual costs of capital maintenance and improvements. The source of these figures was not disclosed. Long-term records of actual expenditures would be more relevant than averages for other vessels.
    b. While the cost of major, somewhat irregular, but routine refurbishment might sensibly be capitalized in establishing the true cost of capital equipment, the characterization of the amounts as "unsettled insurance claim costs and/or refurbishments" suggests that these were not considered routine. Yet, the number of vessels suffering these events, suggests that the events, while not being regular, were not rare. Thus, these items are likely not in the "Capital Maintenance" budgets deducted by Mr. Quackenbos, but should not have been ignored.
    c. The "Capital Maintenance" budgets deducted by Mr. Quackenbos were $130,000 per year for the 6,000 horsepower vessels, $160,000 per year for the $10,500 horsepower vessels, $200,000 per year for the 12,500 horsepower vessels, $220,000 per year for the 15,000 horsepower vessels, and $250,000 per year for the 16,500-horsepower vessel. No sources for these figures have been disclosed. The rounded nature of the figures suggest that they may not have a statistically-determined, or otherwise reliable basis.

d. Overall, QUBED's assertion that the analysis arrives at the "true operational costs per vessel" is questionable.
4. "Computed operational costs to average 50.18% of generated revenue, which falls approximately 5% higher than that typically found when evaluating similar vessels and served as the baseline for a conservative approach to FMV."
    a. The calculation of 50.18% operational costs is based on Mr. Quackenbos' estimate of the average operating costs for all 12 of the vessels listed by Mr. Quackenbos.[5]
    b. Mr. Quackenbos assumed that this cost ratio would apply uniformly to each of the five horsepower levels of the 12 vessels in his list.
    c. This assumption is contradicted by the actual data for the 12 vessels, whose cost percentage varies from as low as 38.83% of revenue to as high as 71.00% of revenue.
    d. Mr. Quackenbos states, without providing his source, that the 50.18% cost ratio is "approximately 5% higher than that typically found when evaluating similar vessels."
    e. Thus, the 50.18% cost ratio "served as the baseline for a conservative approach to FMV, or 'fair market value.'" The question of whether Mr. Quackenbos is being conservative or not will be left to a future report.
5. "Tabulated evaluated vessels by HP category, with weighted average operational costs."
    a. The weighted average of operational costs was based on all 12 of the vessels listed by Mr. Quackenbos.
    b. It is not clear why Mr. Quackenbos would expect the overall weighted average would be applicable to every horsepower category.
6. "Calculated average gross profit per HP per annum ("GP/HP") by category."
    a. Mr. Quackenbos does not explain why this particular ratio is relevant.
    b. It should be noted that the ratio is based on an overall estimate of the operational cost ratio, and not the actual ratio that applies to each vessel during the "Evaluation Period." Thus, the gross profit, as estimated, is not the actual gross profit of the vessel being examined. It is not clear why Mr. Quackenbos performs the analysis this way, but it clearly reduces the "fit" of the data to the individual vessels.
7. "Comparing the 10,500 HP – 15,000 HP tugs' GP/HP performance against that of the 6,000 HP and 16,500 HP tugs, noted that same averaged 94% higher and 19% lower than the average 10,500 HP – 15,000 HP tugs respectively, whereas the maximum deviation between the 10,500 HP and 15,000 HP tugs was less than 4%. Therefore, in order to maintain the conservative approach, eliminated 6,000 HP and 16,500 HP tugs from consideration, rendering the analytical category solely 10,500 HP – 15,000 HP tugs ("Target Category")."

---

[5] As is discussed later, Mr. Quackenbos appears to be mixing analysis of a larger group of vessels with analysis a much smaller group without explaining why some information relating to the larger group is relevant but other information is not.

    a. Mr. Quackenbos determined that the average financial performance, as measured by the gross profit to horsepower ratio of the three 6,000 horsepower vessels is not relevant to analysis of the Crosby Enterprise, a 12,500-horsepower vessel. He has also determined that the economic performance, as measured by the gross profit to horsepower ratio, of the 16,500-horsepower vessel is not relevant to the analysis of the Crosby Enterprise. Again, we note that the gross profit to horsepower ratio for each vessel was not based on the actual gross profit ratio for that vessel.

    b. After removing the 6,000- and 16,500-horsepower vessels from his list, 8 vessels, ranging from 10,500 horsepower to 15,000 horsepower remain, and Mr. Quackenbos terms these the "Target Category."

    c. Note that the 50.18% cost ratio is not re-estimated on the data for the remaining craft.

8. "Analyzed actual utilization of the Target Category vessels, eight (8) in total, and found that four (4) underwent significant refurbishments during the evaluation period, consistent with Crosby's presumable overall campaign to refurbish larger vessels for an improving marketplace, vis a vis the Vessel."

    a. Crosby did not provide data that would show the "improving marketplace." Five years of monthly operating data for each vessel in the Crosby fleet would be likely to allow an analysis of the market as faced by Crosby vessels.

    b. Mr. Quackenbos did not list the "four (4) vessels that underwent significant refurbishments during the evaluation period."

9. "Compared those out-of-service refurbishment days to opined Customary Shipyard Allowances of 10.5 days per year [(30 Days per 5 years = 6 – Capital & Regulatory Maintenance) + (5 Days per 2 years = 2.5 – USCG Inspections) + (2 Days per year = 2 – Unplanned Maintenance) => (6.0 + 2.5 + 2.0 = 10.5)]."

    a. The basis for Mr. Quackenbos' "opined Customary Shipyard Allowances" was not disclosed.

    b. The formula in paragraph 9 is not well-explained, but it appears to eliminate lost workdays due to several potential causes. The reasoning behind this adjustment is not provided.

    c. Upon receipt of additional information, this report will be supplemented as may be appropriate at the time.

10. "Found that the 52.28% utilization of the Target Category actually experienced over the Evaluation Period would normally equate to 69.65% utilization (8.58% difference). However, taking the 12,500 HP vessels as stand-alone, the normal utilization would only be approximately 8.51% greater. Thus, in order to maintain a conservative approach, the 8.51% was employed as a Utilization Factor."

    a. This paragraph is incorrect. A difference of 8.58% over 52.28% gives 60.86%, which the figure Mr. Quackenbos estimated for the entire "Target Category."

    b. It appears that Mr. Quackenbos picked up his estimated 69.65% average utilization for the 12,500 horsepower tugboats, instead of the 60.85% utilization

figure he estimated for the entire Target Category. The 69.65% rate is actually more than 17% greater than the so-called "raw utilization" rate.

    c. There is not a complete explanation of the reasoning behind their renormalization of the utilization rates. At this point, it is not clear that these calculations "maintain a conservative approach."

    d. It might appear that the QUBED analysis has shifted to analyzing entirely on the basis of the two 12,500-horsepower tugboats. This is not true. The cost ratio utilized is still based on those from the 12-vessel initial group.

11. "Considered a gross profit of 30% for what a responsible operator would target in order to maintain a viable and profitable business, and imputed debt service availability from the sustainable gross profits at 60.79% utilization (52.28% + 8.51% = 60.79%)."

    a. Mr. Quackenbos opines that a responsible owner would target a gross profit of 30%, in order to maintain a viable and profitable business. He does not give a source for this figure.

    b. Mr. Quackenbos appears to believe that a "responsible operator" can pick its own profit margin. Mr. Quackenbos does not disclose that he has performed a market analysis of Crosby's competitive situation, and its ability to set prices to produce a chosen profit margin.

    c. It is not clear that Mr. Quackenbos has checked the financial performance of the various boats in Crosby's fleet to determine if they are meeting his expectation.

    d. This is one reason why it is important to view five years of monthly financial statements for each of the twelve boats, in order to determine whether Crosby actually does what Mr. Quackenbos asserts that they must do.

12. "Based on the lowest and highest calculated gross profits of Target Category tugs, determined that, in order to maintain profitability consistent with Item 11 above, the range of allowable debt service was approximately $946,000.00 to $1,177,000.00 annually per vessel."

13. "Modeled debt service under the scenarios further described below to arrive at the lower and upper ranges of allowable vessel cost financing in order to determine the Raw FMV."

    a. One of the implications of this approach is that if Crosby is financially strong, then the Enterprise has high value and that if it is weak, then it has low value. It appears that Mr. Quackenbos believes that a company's ability to finance the purchase of a tugboat is the primary determinant of the fair market value of the vessel. While I am not a marine appraiser, the ability of a company to finance a new factory or piece of machinery is not the sole determinant of the fair market value of a new factory or piece of machinery.

    b. It does not appear that Mr. Quackenbos was provided sufficient financial information to allow an assessment of Crosby's financial strength.

    c. On page 6, Mr. Quackenbos provides his definition of fair market value.

14. "Accounted for the Defendant's quoted repair costs to the Vessel prior to the fire (Bates Crosby 0165) and added a conservative value for additional work required to return same to full classification and render her service-ready."

    a. We have no comments at this time.

15. "Deducted the total cost established in course of Item 14 immediately above from the Raw FMV in order to determine the Vessel's opined FMV just prior to the fire casualty."
    a. We have no comments at this time.
16. "Given that the average gross profits calculated as part of my Target Category analysis were found to be approximately $106,000.00 per month, prior to application of the 8.51% Utilization Factor, multiply the $106,000.00 by 1.0851 (1 + Utilization Factor) to arrive upon approximately $115,000.00 per month of actual sustainable gross profit per vessel."
    a. We have no additional comments at this time.

Upon receipt of additional information, this report will be supplemented as may be appropriate at the time.

Sincerely,

Stephen M. Horner, Ph.D.

Attachments:
Appendix A: Materials Provided
Curriculum Vitae of Stephen M. Horner, Ph.D.
Curriculum Vitae Addendum of Stephen M. Horner, Ph.D.
Curriculum Vitae of Michele Gaines, MBA
Horner List of testimony given in last four years
Gaines List of testimony given in last four years
Rate Sheet applicable to this case

Appendix A

RECORDS PROVIDED:

    Original Verified Complaint of Crosby Marine Transportation, LLC

    Financial Analysis and Economic Loss Report prepared by J. P. Quackenbos, Jr., 11/13/2023 (QUBED Report)

    QUBED Limited L.C. Report No. 22-1003-CTI-02 [Damage Survey], 10/06/20222

    CROSBY 0001-0166

    CROSBY 0167-0168 Certificate of Inspection for Crosby Enterprise 10/12/2018

    CROSBY 0169-0175 Photos

    CROSBY 0176-0182  Notes (for shipyard work)

    CROSBY 0186-0214 Emails (apparently regarding potential jobs)

    CROSBY 460 Aerial video of Crosby Enterprise on fire in shipyard

    CROSBY 0215-0459 Daily Work Tickets 03/06/2015 to (illegible dates in 2019)

    CROSBY 0464-0467  Email regarding post-fire repair work $691K

    CROSBY 0461-0463 Blueprints of Crosby Enterprise

    Southwest Shipyard First Requests for Production

    Southwest Shipyard Second Requests for Production

    Crosby Initial Disclosures

    Continuous Synopsis Record, Crosby Enterprise, w document 3, 20 May 2009

    Southwest Shipyard Initial Disclosures

    Southwest Shipyard First Amended Initial Disclosures

    Deposition of Scott Theriot with exhibits

    Southwest Shipyard, LP's, Second Set Of Requests For Production To Crosby Marine Transportation, LLC

    Crosby Supplemental and Amended Answers

S<span style="font-variant:small-caps">tephen</span> M. H<span style="font-variant:small-caps">orner</span>, P<span style="font-variant:small-caps">h</span>.D.
*Economic, Business & Statistical Consulting*
Since 1985
P.O. Box 260960
Corpus Christi, Texas 78426
(361) 883-1686
www.economicconsulting.com

*CURRICULUM VITAE*

EDUCATION

Ph.D., Economics, The University of Michigan, Ann Arbor, Michigan, 1977
M.P.P., Public Policy Studies, The University of Michigan, Ann Arbor, Michigan, 1973
B.Sc., Economics, California Institute of Technology, Pasadena, California, 1970
Graduated, W.B. Ray High School, Corpus Christi, Texas, 1966

CONSULTING

| | |
|---|---|
| 2005-2006 | Port of Corpus Christi Authority (with Emerson Technical Analysis) |
| 1985-Present | General Economic, Business and Statistical Consulting, Various Defense and Plaintiff's Attorneys; Personal Injury and Commercial Damage Economic Evaluation (over 3,000 cases) |
| 1987 | Corpus Christi Warehouse and Storage, Corpus Christi, Texas; Lease Negotiation Support |
| 1985 | Susser Petroleum Corporation, Apache Fuels, Corpus Christi, Texas |
| 1978 | Urban Systems, Inc., Cambridge, Massachusetts |
| 1976 | City of Ann Arbor Cablecasting Commission, Ann Arbor, Michigan |

EMPLOYMENT

| | |
|---|---|
| 1999 | Adjunct Professor of Economics, Texas A&M University, Corpus Christi, Texas |
| 1979-1989 | Executive Vice President, Oil Field Equipment Co., Corpus Christi, Texas |
| 1977-1979 | Assistant Professor of Economics, Wellesley College, Wellesley, MA |
| 1976-1977 | Lecturer in Economics, Wellesley College, Wellesley, MA |
| 1975 | Lecturer, School of Public Health, The University of Michigan, Ann Arbor, MI |
| 1974-1975 | Teaching Assistant, School of Public Health, The University of Michigan, Ann Arbor, Michigan |
| 1972-1975 | Research Assistant, The Institute of Public Policy Studies, The University of Michigan, Ann Arbor, Michigan |
| 1971 | Teaching Assistant, Industrial Engineering, School of Engineering, The University of Michigan, Ann Arbor, Michigan |
| 1970-1971 | Special Administrative Assistant to the Chairman of the Board, International Business Machines Corporation, IBM Internship Program, Armonk, New York |

PROFESSIONAL ASSOCIATIONS

National Association of Forensic Economics, (President 2003-2005, Western Vice-President, 1992 - 1996) and *Journal of Forensic Economics*, (Board of Editors, 1996-2000)

*Journal of Business Valuation and Economic Loss Analysis*, (Board of Editors, 2009-present)

American Academy of Economic and Financial Experts

American Economic Association

American Statistical Association

Western Economic Association International

PUBLICATIONS

"The Meaning of Earning Capacity," with Frank Slesnick, Chapter 2 in *Forensic Economics: Assessing Personal Damages in Civil Litigation*, Frank Tinari, editor; New York: Palgrave Macmillan, 2016

"Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of Texas," in *Journal of Forensic Economics,* 2007, 20(1), 49-71. (published February 2008)

"The Valuation of Earning Capacity: Definition, Measurement and Evidence," with Frank Slesnick, in *Journal of Forensic Economics,* 1999, 12(1), 13-32. Reprinted in Roger Kaufman, James D. Rodgers, and Gerald Martin, *Economic Foundations of Injury and Death Damages,* Northampton, MA: Edward Elgar, 2005. This paper was awarded the *Journal of Forensic Economics* Ward Piette Research Prize, 2014.

"Reference Guide for Valuing Economic Loss in Personal Injury, Wrongful Death and Survival Actions," with Thomas R. Ireland and James D. Rodgers, in *Expert Economic Testimony: Reference Guides for Judges and Attorneys*, by Thomas R. Ireland, Stephen M. Horner, James D. Rodgers, Patrick A. Gaughan, Robert R. Trout and Michael J. Piette. Tucson, AZ: Lawyers & Judges Publishing Company, 1998. (Reissued in 2002 on CD)

Review of Gamboa, Jr., A. M. (1995): *The New Worklife Expectancy Tables*, in *Journal of Applied Rehabilitation Counseling,* Volume 27, Number 3, Fall 1996, page 67

STEPHEN M. HORNER, PH.D.
Economic, Business & Statistical Consulting
P.O. Box 2685
Corpus Christi, Texas 78403
361/883-1686

*CURRICULUM VITAE ADDENDUM*

Additional Details of Education and Experience Related to Business

EDUCATION
Ph.D. Major Field: Industrial Organization, which is the study of industrial market structure and economic performance. This field includes economics aspects of antitrust, unfair trade practices, public regulation of private business, technological change, and the economics of information.

EMPLOYMENT AND BUSINESS ACTIVITIES

Economic Consultant, Economic Business and Statistical Consulting (sole proprietorship), 1985 to present. Primary economic consultant and business manager, providing litigation support and economic analysis to attorneys and businesses on a contract basis (See below.)

Executive Vice President, Oil Field Equipment Company, 10 years
Chief Financial Officer of 55 employee firm selling oil field supplies and equipment to the oil and gas field services industry, with responsibilities covering asset management, credit, inventory, personnel, risk management

Special Administrative Assistant to Chairman of the Board, IBM Corporation, 1 year
Internship program, with numerous special assignments, involving budgeting cycle, personnel management, industry sales evaluation, design of internship program for the future.

Owner of Commercial Real Estate, 14 years as owner-operator of office warehouse space for industrial tenants.

Part Owner of Saathoff Reps, Inc., 3 years
Part owner and officer of firm representing several manufacturers of oil field equipment, cleaning supplies, and paint products.

COMMERCIAL LITIGATION AND RELATED EXPERIENCE

Performed analysis of lost profits for attorneys representing both Defendants and Plaintiffs in over 200 cases involving allegations of antitrust law violations, breach of contract, damage to commercial property, construction defects, defective products, theft of intellectual property, patent infringement, legal malpractice, lender liability, insurance company bad faith, personal injury and wrongful death leading to corporate damages. Business enterprises involved in this litigation include: automotive vehicle dealerships, commercial finance, petroleum refining, industrial distribution, manufacturers' representatives, retail clothing, heavy construction, hospital, international freight forwarding, independent insurance agency, commercial hog farming, commercial bird production, real estate title company, coin-operated laundry, coin-operated vending, commercial truck repair, custom harvesting, retail appliances, retail furniture, oil field hauling, oil field workover, oilfield rat hole drilling, office machines, door sales, residential construction, medical practice, medical imaging, dental practice, petroleum production, soft drink process patents, royalty interests, festival market, retail book sales, trucking, tugboat services, and others. Consulted with Internal Revenue Service on valuation of inventory of trade-in merchandise.

OTHER EXPERIENCE

Performed analysis and prepared presentations in support of lease negotiations, economic impact studies for expansion of harbor facilities, evaluated stock in Employee Stock Ownership Plans, evaluation of closely-held business interests. Evaluated and performed independent analysis of Plaintiff model of property values and their relationship to proximity to refinery complex.

February 13, 2023

# Michele D. Gaines, MBA

*Economic Consulting*
P.O. Box 260960
Corpus Christi, TX 78426
(361) 883-1686
www.economicconsulting.com
mda@economicconsulting.com

## CURRICULUM VITAE

EDUCATION
MBA, Texas A&M University- Corpus Christi, 2007
BA, General Business, Texas A&M University- Corpus Christi, 2004: Cum Laude
Calallen High School, 1999

EMPLOYMENT
2005-Present Economic Consulting, Corpus Christi, Texas: Economic Consultant
2004-2005 Robin Perrone, CPA, Corpus Christi, Texas: Administrative Assistant
1999-2004 Schauer & Simank, PC, Corpus Christi, Texas: File Clerk

PROFESSIONAL ASSOCIATIONS
National Association of Forensic Economics, Southern Vice President 2019-2021
National Association of Forensic Economics, Associate Executive Director 2021-current
American Academy of Economic and Financial Experts
Western Economic Association International
American Economic Association

PUBLICATIONS AND PRESENTATIONS
National Association of Forensic Economics, San Francisco, CA, 2016. Presentation "Pitfalls in Forensic Economic Analysis: Valuation"
National Association of Forensic Economics, Portland, OR, 2016. Presentation "Social Security in Personal Injury"
National Association of Forensic Economics, Chicago, IL, 2017. Presentation "Individual and Joint Life Annuities from 2012 Extended US Life Tables"
National Association of Forensic Economics, San Diego, FL, 2017. Presentation "The Link between Causation and Damages in Commercial Cases"
National Association of Forensic Economics, Vancouver, Canada, 2018. Presentation "Estimating Earning Capacity of the Undocumented Worker"
National Association of Forensic Economics, San Francisco, CA, 2019. Presentation Panel Discussion of FE practices in PI/WD

QUALIFICATIONS
Working my way through college, I began in the legal field as a file clerk for a local law firm. After graduating with honors with a Bachelor's Degree in Business Administration, I worked for a CPA firm. I began my career with Economic Consulting in 2005, providing economic analysis in over 1,500 cases in the past sixteen years. Although most of my experience has been in cases involving allegations of personal injury or wrongful death, I have also prepared analysis of economic loss in discrimination and wrongful termination cases, medical malpractice, breach of contract, tortious interference, theft of trade secrets, and similar commercial litigation.

April 19, 2023

Stpehen M. Horner, PhD

| Date | Testimony | Case Number | Case Name | Attorney Name | | Court | Cause Number | Style of Case |
|---|---|---|---|---|---|---|---|---|
| 1/21/2019 | Deposition | 38073 | Regalado | Gonzalez | D | 229th Judicial District Court, Duval County, Texas | DC-17-18 | Ashley Anais Regalado v. Almaguer Livan Izaguirre, Luis Fernandez and Kingdom Cargo, LLC |
| 2/25/2019 | Deposition | 38028 | Garza | Cowen | D | 229th Judicial District Court, Duval County, Texas | DC-17-97 | Consuelo C. Garza, Individually and as Representative of the Estate of Nicolas R. Garza, Corina Garza, Orlando Garza, and Rolando Garza v. Femco, Inc., Femco Manufacturing, Inc., Scag Power Equipment, Metalcraft of Mayville, Inc., A-C Lawn & Garden Services, Susan Webb, Robert Sibley, Sibley Family Living Trust |
| 4/29/2019 | Deposition | 38032 | Luce | Gamblin | D | 94th Judicial District Court, Nueces County, Texas | 2017DCV-5925-C | Burl Luce and Pamela Gomez v. SGS North America, Inc., DBA SGS Petroleum Services Corporation, Lease Plan USA, Inc., Invista SARL, and Billy Wayne Rogers |
| 5/1/2019 | Deposition | 38084 | Symanski | Ybarra | D | 143rd Judicial District Court, Reeves County, Texas | 17-05-21972-CVR | William "John" Symanski v. Jesus Guadalupe Villa and Stuart Petroleum Testers, Inc. d/b/a Stuart Pressure Control |
| 5/6/2019 | Deposition | 39007 | Caraveo | Edwards | D | 1st Judicial District Court, Santa Fe County, New Mexico | D-101-CV-2017-03264 | Todd Lopez, as Personal Representative of the Estate of Julissa Caraveo; Marissa Quezada, as Personal Representative of the Estate of Susana "Susie" Caraveo; Julio Caraveo, as Personal Representative of the Estate of Jose "Elias" Caraveo; Diego Zamora, as Personal Representative of the Estate of Jose Clement, Sr.; Consuelo Clemente, Individually; Kristina Martinez; as Personal Representative of the Estate of Maurella Munoz; Adrian Munoz, Individually and as Next Friend of Minor Child; AJM |
| 5/28/2019 | Deposition | 39027 | Warden | Gonzalez | D | the 166th Judicial District Court, Bexar County, Texas | 2018-CI-01313 | Kevin Bradford Warden v. Jose J. Padilla, Aggregate Haulers 1, LP d/b/a Aggregate Haulers, and AH, LLC |
| 6/5/2019 | Deposition | 39024 | James | Chapa | D | County Court at Law No. 1, Nueces County, Texas | 2016-CCV-62359-1 | Sandra Etta James v. CC Frost Properties, Ltd., CC Frost GP, LLC; REOC Partners, LTD, d/b/a NAI REOC Partners; Whelan Security Co., and Zindler Services, Co |
| 8/12/2019 | Deposition | 39009 | Aransas Princess | Chriss | P | United States District Court, Southern District of Texas, Corpus Christi Division | 2:18-CV-341 | Aransas Princess Condominium Association, Inc. v. Landmark American Insurance Company |
| 9/16/2019 | Deposition | 39066 | McBride | Gallego | D | United States District Court, Northen District of Texas, Dallas Division | 3:18-CV-068/4-C | Jerry McBride and Morris McBride v. Scott Newbould, Iron Mountain Information Management, LLC, and Penske Truck Leasing Co., LP |
| 11/21/2019 | Deposition | 38075 | Falcomata | Speier | D | 127th Judicial District Court, Harris County, Texas | 2016-41450 | Erica Falcomata and Brian Reina, Individually and on Behalf of the Estate of Russell Reina (Plaintiffs and Counter-Defendant) v. Amjad Sultan (Deceased), Air Akhtar Heating & Air Conditioning, LLC, Cirrus Aircraft Corporation, Cirrus Design Corporation d/b/a Cirrus Aircraft, and Ballistic Recovery System, Inc. (Defendants) v. Shafqat Ali, as Representative Deceased, and as next friend of minor children; Farid Jan Individually; Amir Sultan, Individually, Tyler Sultan, Individually, Shazia Sultan, individually, and Santos Cristina Argueta, Individually as a Representative of the Estates of Jessica Delmira Argueta, deceased minor and Erika Joanna Ayala Argueta, deceased minor (Intervenors |
| 12/27/2019 | Deposition | 39062 | Echevarria | Pederson | D | the 225th Judicial District Court, Bexar County, Texas | 2018-CI-04666 | Daneesha Echevarria v. Theis Distributing Co., Santex Truck Centers, Ltd., Kyrish Truck Centers and Jeffery Duane Earle |
| 1/8/2020 | Deposition | 39012 | Olivarez | Pederson | D | County Court of Law 2, Nueces County, Texas | 2017CCV-61557-2 | Brittany Olivarez v. Theis Distributing Co. and David Valdez |
| 1/10/2020 | Deposition | 39100 | Qamar | Prewett | D | 270th Judicial District, Harris County, Texas | 2018-45553 | Mahnaz Qamar And Salman v Peter D. Williamson and Chamberlain, Hrdlicka, White, Williams & Aughtry |
| 1/28/2020 | Deposition | 39087 | Vega | Sutker | D | County Court at Law No. 2, Nueces County, Texas | 2016CCV-60868-2 | Valerie Vega, Individually and As Next Friend Of Jewel Salcedo, A Minor, Plaintiffs V. Driscoll Children's Hospital, Matthew K. Steehler, M.D., And Ear, Nose & Throat Associates Of Corpus Christi, Susan Podewitz, And Sandra Fricks |
| 4/3/2020 | Deposition | 40002 | Herbert | Scaglione | D | 288th Judicial District Court, Bexar County, Texas | 2018CI19487 | Shelli Herbert v. Lone Star Relocation Services, Ltd., and Timothy Brierty |
| 4/15/2020 | Deposition | 39098 | Garrison | Watts | P | 73rd Judicial District Court, Bexar County, Texas | 2019CI00853 | Keath Garrison and Kassie Garrison, Individually and as Next Friends of Karrah Garrison and Maycie Garrison, minors and Haela Garrison; Ernest Copelin, Individually and as Representative of the Estate of Power T. Nathan Copelin, deceased and Tangela M. Copelin; Zurich American Insurance Company, as subrogee of Opus Design Build, LLC; and Texas Mutual Insurance Company as Subrogee of Keath Garrison and Roper T. Nathon Copelin, Deceased v. Opus AE Group, LLC, Opus Design Build, LLC, ESC Consultants, Inc., Darr & Collins, LLC, LM Consultants, Inc., Olympiatech Electrical Contractors, Inc., Karges-Gaulconbridge, Inc., Industrial Connections & Solutions, LLC, Successor Company to General Electric Company, General Electric Company, Viking Electric Supply, Inc., Ceco Concrete Construction, LLC Roofs, Inc., Southwest GC, Inc., AKF Group, LLC & Amarillo Fire and Safety, Inc |
| 4/29/2020 | Deposition | 39067 | Balderaz | Cuellar | D | 81st Judicial District Court, LA Salle County, Texas | 19-02-00015-CVL | Rogelio Balderez v. Allstate County Mutual Insurance |
| 9/21/2020 | Deposition | 39099 | Batista | Vetterling | D | 55th Judicial District Court, Harris County, Texas | 2018-62832 | Armando Batista v. Toroz Inc,. and Marden Grancisco Bonilla |
| 12/9/2020 | Deposition | 40042 | Martin | Martinez | D | County Court at Law No. 2, Nueces County, Texas | 2019CCV-60498-2 | Creon Martin v. Jesus Emanuel Calderon Pacheco and Distributions I, LTD |
| 4/7/2021 | Trial | 40002 | Herbert | Scaglione | D | 288th Judicial District Court, Bexar County, Texas | 2018CI19487 | Shelli Herbert v. Lone Star Relocation Services, Ltd., and Timothy Brierty |
| 4/27/2021 | Deposition | 40116 | Williams | Kasperitis | D | 343rd District Court, San Patricio County, Texas | S-19-5957CV-C | Rebecca Nicole Williams v. B&B Electrical & Utility Contractors, Inc. and Tommy Alan Thompson |
| 6/23/2021 | Deposition | 41029 | Cantu-Silva | Duke | D | United States District Ct, Southern Dist. of Texas, Laredo Div | 5:19-cv-001051 | Hermilo Cantu Silva v. USA |
| 7/27/2021 | Deposition | 41033 | Munoz | Gonzalez | D | 438th Judicial District Court, Bexar County, Texas | 2017-CI-08566 | Norma Iris Munoz, Individually and on Behalf of Cesar S. Munoz, and as next friend of Eli Munoz and Mia Munoz and Sylvia Salazar; and Gary Parson v. The Rowland Group, WW Rowland Trucking, Co. Inc., Wwinners Container Services, Inc., Intermodal Data Systems, Inc. FlexiVan Leasing, inc., Urbino Ramirez, Jose Huan Hernandez, Consolidated Chassis Management Inc., WW Rowland Investment Co., Inc., Securitas Security Services USA Inc., Brandon Smith, William Rowland, Ero Enterprises, Inc., Bridge Chassis Supply, LLC, K Line America, Inc., and Ruben Hernandez |
| 8/13/2021 | Deposition | 41054 | Zamarripa | Gault | D | 445 Judicial District Court, Cameron County, Texas | 2014-DCL-910-I | Cause No. 2014-DCL-910-1; Reynaldo Ramirez, Individually and as Former Personal Representative of the Estate of Yolanda Iris Flores, and as Representative of all Wrongful Death Beneficiaries, and as Next Friend of Rey Fracis Ramirez, and Rammy Justin Ramirez, minors, Plaintiffs and Olga Flores, as Temporary Administrator of the Estate of Yolanda Iris Flores, and Maria Zamarripa, as Temporary Guardian of the Estate of Rey Francisco Ramirez and Rammy Justin Ramirez, minors, Intervenors v. Columbia Valley Health Care System, LP, dba Valley Regional Medical Center, Dr. Ricardo Lemus, Dr. Patricia Ellis, Dr. Whitney Gonsoulin, Bay Area Health Care Group, ltd, dba Corpus Christi Medical Center, Hidalgo County EMS, and Hidalgo County Emergency Medical Service Foundation; IN the 445th Judicial District Court, Cameron County, Texas |
| 9/1/2021 | Deposition | 41065 | Garcia | Daniels | D | 166th Judicial District Court, Bexar County, Texas | 2020CI10221 | Vivian Garcia, Individually and as Representative of the Estate of Benito V. Garcia v. Costal Transport Co., Inc., and Jaime Alejandro Gonzalez |
| 10/13/2021 | Deposition | 39113 | Luna | Gonzalez | D | 225th Judicial District Court, Bexar County, Texas | 2018CI03347 | Olga Lydia Luna v. Aggregate Haulers I, LP and Mira, LP |
| 10/28/2021 | Deposition | 41057 | Witte | Baker | P | 408th Judicial District Court, Bexar County, Texas | 2019CI07694 | Townhomes at the Witte, LLC vs. Allbrite Constructors of Texas, Inc |
| 11/22/2021 | Trial | 41036 | Aragus | Dennis | D | 57th Judicial District Court, Bexar County, Texas | 2019-CI-17715 | Oleagrio Aragus, Jr. v. Always Auto Group, LTD and David Louis Rios |
| 12/15/2021 | Deposition | 41071 | Grajeda | Alcantar | D | 327th Judicial District Court, El Paso County, Texas | 2018DCV3527 | Manuel Gerardo Grajeda v. Balfour Beatty communities, LLC, Balfour Beatty Construction, LLC, and Fort Bliss White Sands Missile Range Housing, LP |

| Date | Type | ID | Last Name | First Name | P/D | Court | Cause No. | Case |
|---|---|---|---|---|---|---|---|---|
| 1/19/2022 | Trial | 41086 | Britt | Dennis | D | United States District Court, Western District of Texas, Austin Division | No. 1:19-CV-00781-RP | Stephanie Britt v. Walgreen Co. |
| 1/25/2022 | Deposition | 41027 | Larowe | Rogers | D | In the Superior Court of the State of Arizona; County of Pima | Cause No. C20200267 | Cause No. C20200267; Kristin Anne Larowe, individually and on behalf of her minor son, Braxton Kane Larowe v. Stephanie Noelle Schock, MD, Jonathan Nicholas Young, MD, David Alan Parry, MD, Jonnae Ostrom, MD, John and Jane Does 1-10, State of Arizona, an Arizona Governmental entity, Arizona Board of Regents, an Arizona Governmental entity, Banner University Medical Center, Tucson Campus; In the Superior Court of the State of Arizona; County of Pima |
| 2/2/2022 | Deposition | 40077 | Akins | Ray | D | In the United States District Court, Eastern District of Texas, Texarkana Division | Civil Action No.: 5:19-cv-121 | Civil Action No.: 5:19-cv-121; Robert Howard Akins and Emillia Kay Akins, individually and as next friends of Charles Scott Akins and Charles Scott Akins, Individually v. Riddell, Inc. Riddell Sports, Group, Inc. all American Sports Corporation, and BRG Sports, Inc; In the United States District Court, Eastern District of Texas, Texarkana Division |
| 3/11/2022 | Trial | 39075 | Munoz | Hopkins | P | County Court at Law No. 4, Nueces County, Texas | Cause No. 2018CCV-60888-4 | Cause No. 2018CCV-60888-4; Deflina Gonzalez, Individually and Mark Anthony Gonzalez, Bonnie Marie Gonzalez, Luis Alberto Munoz, Jacob Manuel Munoz, as children Juan Munoz, deceased v. Amar Sunkari, MD, and Deobrat C. Mallick, MD; In the County Court at Law No. 4, Nueces County, Texas |
| 3/15/2022 | Deposition | 41092 | Vigilant | Dennis | P | United States District Court for the Southern District of Texas, Corpus Christi Division | Civil Action No. 2:21-cv-65 | Civil Action No. 2:21-cv-65; Admiralty Fed. R. Civ. P. 9(h); Signet Maritime Corporation, Plaintiff, v. RLB Contracting Inc |
| 3/30/2022 | Deposition | 41095 | Luce | Baker | D | 218th Judicial District Court, Frio County, Texas | Cause No. 19-06-00204CVF | Scott Luce v. Hard Rock Directional Drilling, LLC and Hardrock Equipment Rental, LLC and Jonathon Ortega |
| 4/4/2022 | Deposition | 41073 | Evans | Dennis | D | 288th Judicial District Court, Bexar County, Texas | Cause No. 2019-CI-21805 | Kasey Evans v. Hector Cruz and Delsa Logistics, LLC |
| 5/3/2022 | Deposition | 41113 | Garza | Wickern | D | County Court at Law No. 4, Nueces County, Texas | Cause No. 2020CCV-61215-4 | Arturo Garza v. Nicholas H. Alaniz and Gate Guard Services, LP |
| 5/9/2022 | Deposition | 40122 | Connell West | Chavez | D | U.S. District Court for the Western District, El Paso | No. 4:20-cv-03649 | Connell West Trucking Co., Inc. et al v. Estes Express Lines et al |
| 8/10/2022 | Deposition | 42038 | Guerreo | Ward | D | 55th Judicial District Court, Harris County, Texas | Cause No. 2020-67927 | Roll-Lift USA, Inc., and Kenneth Freeman |
| 8/19/2022 | Deposition | 41016 | Andino-Lopez | Hopkins | P | United States District Court, Western District of Wisconsin, Madison Division | No. 3:21-cv-00238-wmc | Thomas Jeffes Steffes, Michels Corporation and the ABC Insurance Company v. ADA S. Rivera-Tabora, Individually, and as Next Friend of her minor children, JJAR, DJAR, and JGAR |
| 9/7/2022 | Deposition | 39090 | Avila | Longoria | D | 111th Judicial District Court, Webb County, Texas | No. 2015CVT001668D2 | Robert Avila Rodriguez v. Tammy Rheudean Ellis, Thomas Jay Daly, Panther Expedited Services, Inc., Dicex International, Inc., and Amigo Staffing, Inc. |
| 11/14/2022 | Deposition | 42070 | Galindo | Gault | D | 197th District Court of Cameron County, TX | Cause No.: 2020-DCL-00983 | Robert E. Galindo, Individually and As Independent Administrator of The Estate Of Robert Christopher Galindo, Deceased; Carrie Galindo, Individually And As Next Friend Of V.R.G., A Minor; And Nancy Galindo v. VHS Brownsville Hospital Company, LLC D/B/A Valley Baptist Medical Center-Brownsville; Stanley Peter Sison Sy, Md; Jaime Luis Silva, Md and Jaime Silva Md, P.A.; Jairo Rodriguez, Md, And Brownsville Pulmonary Center, P.A.; Ricardo Martin Schwarcz, Md And MS Medical Consultants, PLLC |
| 12/1/2022 | Trial | 41092 | Vigilant | Dennis | P | United States District Court for the Southern District of Texas, Corpus Christi Division | Civil Action No. 2:21-cv-65; Admiralty Fed. R. Civ. P. 9(h) | Signet Maritime Corporation v. RLB Contracting Inc. |
| 1/4/2023 | Deposition | 41034 | McCrossen | Ellis | D | 438th Judicial District Court, Bexar County, Texas | Caues No. 2019-CI-20867 | Matthew McCrossen v. Stephanie Thompson |
| 1/30/2023 | Deposition | 42092 | Schilling | Flores | D | 152nd Judicial District Court, Harris Count, Texas | Cause No. 2019-86365; | Shawn Schilling, Tammy Schilling and Cody Cater v. Chevron USA, Inc., and James Earl Rardin |
| 1/31/2023 | Deposition | 42035 | Alvarado | Lopez | P | 133rd Judicial District Court, Harris County, Texas | Cause No. 2021-13191 | Grace Cruz, Individually and as Representative of the Estate of Rene Cruz (Plaintiff) v. Stephanie Cruz, Misty Torres and Eric Cruz, Individually (Intervenor Plaintiffs) Gabriela Alvarado Lozano, Individually and as Personal Representative of the Estate of Horacio Acosta Ramirez, Deceased and as Natural Mother/Next Friend of EA and AA, minors (Intervenor Plaintiffs) v. Matthew Kade McKenzie, Hargrave Power, Inc. Quanta Electric Power Services, Inc., Northstar Energy Solutions, LLC; and Quanta Energized Services US, LLC, Quanta Energized Services US, LLC and Quanta Services, Inc. |
| 2/7/2023 | Deposition | 42073 | Galindo | Schmella | D | 116th Judicial District Court, Dallas County, Texas | Cause No. DC-20-00077 | Dario Galindo v. Brian Patrick Riley, Victory 8:28 Trucking, LLC; and Juan Vargas |
| 2/21/2023 | Deposition | 41075 | Fisher | Wolfe | D | 408th Judicial District Court, Bexar County, Texas | 2019-CI-15764 | Kathleen Fisher v. Johnson Control, Inc., and Pete Casias, Jr.; In the 408th Judicial District Court, Bexar County, Texas |
| 2/28/2023 | Deposition | 42055 | Artis | Butler | D | Arbitration before Ronald Bankston | | Rialyn Sabado Artis, Individually and as the Representative of the Estate of Gerald Leonard Artis, Claimant vs. Averitt Express Inc. |
| 3/15/2023 | Deposition | 42105 | Lee | Delaney | D | Federal Court. Northern District of Texas, Fort Worth | C.A. No. 22-cv-00147 | Michael Le and Dung Le vs. United States of America |
| 4/10/2023 | Deposition | 43012 | Rodriguez | Gamblin | D | County Court at Law No. 1, Nueces County, Texas | Cause No. 2020CCV-61505-1 | Manuela Rodriguez v. Scott Electric Company, Inc.; Scott Electric Holdings, LLC; and Jesus Martinez |
| 7/25/2023 | Deposition | 43028 | Ly | Ramirez | D | 163rd Judicial District Court, Orange County, Texas | Cause No. B210023-C | Coy Nelson v. Expedited Logistics and Freight Services, LLC, Arthur Arrant, Arrant Trucking, Inc., Katheryn Ly, Rhina Martinez, and Donald Bu |
| 8/23/2023 | Arbitration | 43019 | Billings | Williams | P | | Arbitration No. 5300000029 | Sharon Billings v. Omni Hotel and Resorts, Omni Corpus Christi Hotel, HCD Dallas Corporation, Omni Hotels Charitable Foundation HCD Austin Corporation Omni Hotels Management Corporation, Oman Hotel Investments, LLC |
| 9/26/2023 | Deposition | 43039 | Silva | Harrod | P | 214th Judicial District Court, Nueces County, Texas | Cause No. 2021DCV-1777-F | Amy Silva v. Coastal Deli Inc., d/b/a Jason's Deli and Steven Smith |
| 10/2/2023 | Deposition | 43077 | Wooten | Thomas | D | 457th Judicial District Court, Montgomery County, Texas | Cause No. 21-07-09156 | Kaley Wooten and Justin Macks, Individually and as Next Friend of PM, a minor v. Prudencio Sanchez Alvarez |

Michele D. Gaines, MBA

| Date | Case Testimony | Case Number | Case Name | Attorney Name | | Court | Cause Number | Style of Case |
|---|---|---|---|---|---|---|---|---|
| 2/1/2018 | Deposition | 40077 | Akins | Ray | D | In the United States District Court, Eastern District of Texas, Texarkana Division | Civil Action No.: 5:19-cv-121 | Civil Action No.: 5:19-cv-121; Robert Howard Akins and Emillia Kay Akins, individually and as next friends of Charles Scott Akins and Charles Scott Akins, Individually v. Riddell, Inc. Riddell Sports, Group, Inc. all American Sports Corporation, and BRG Sports, Inc; In the United States District Court, Eastern District of Texas, Texarkana Division |
| 1/30/2020 | Deposition | 39038 | Acosta | Vasquez | P | the 83rd Judicial District Court, Pecos County, Texas | P-7947-83-CV | Iselda Morales Acosta, Individually and as Personal Representative of the Estate of Robert Nelson Beal, Deceased v. U.S. Water Services, Inc., and Darren Hinsley |
| 4/19/2023 | Deposition | 43012 | Rodriguez | Gamblin | D | County Court at Law No. 1, Nueces County, Texas | Cause No. 2020CCV-61505-1 | Manuela Rodriguez v. Scott Electric Company, Inc.; Scott Electric Holdings, LLC; and Jesus Martinez |
| 7/12/2023 | Trial | 43031 | Harral | Kahn | D | 342nd Judicial District Court, Tarrant County, TX | 342-327781-21 | Alam Harral v. Building Plastics, Inc., Ldarrius Burns, and Penske Leasing Corp. |
| 9/13/2023 | Deposition | 42114 | Ornelas | Villarreal | D | 143rd Judicial District Court, Reeves County, Texas | 20-12-23788-CVR | Abigail Ornelas, Individually and as Representative of the Estate of Saul Ornelas Ma Refugio Mendoza and Catarino Ornelas v. Kingsley Constructors, Inc., Willow Creek Companies, LLC; Western Midstream Partners, LP, DBM Water Services, LLC, Western Midstream Services, LLC, Western Midstream Operating, LP, W.L. Plastics Corporation and Western Midstream Holding, LLC |

STEPHEN M. HORNER, PH.D.
ECONOMIC, BUSINESS & STATISTICAL CONSULTING
P.O. Box 2685
CORPUS CHRISTI, TEXAS 78403
361-883-1686
Fax: 361-883-1694

Effective November 16, 2023*

RE: Crosby v. Southwest

Retainer Amount: $5,000

Note: This initial retainer amount is based on very limited information. We reserve the right to increase the retainer amount, based on the scope and pace of work as well as the client's payment performance. Retainer will be refunded or applied to final balance at case closure only. Charges for professional services and expenses will be billed monthly. The client is expected to pay monthly invoices promptly. We reserve the right to cease work in this matter if unpaid accrued charges exceed the retainer.

Hourly Rate for Senior Economist Services

$580.00 per hour

Master's Level Economist Services:

$400.00 per hour

Other Professional Services

Additional expert services may be engaged. Advance notice of applicable rates will be given.

Expenses:

Billed at cost

Invoice Delivery: Invoices may be delivered via U.S. Mail or email to the client, or other specified recipient, unless otherwise agreed.

Other Conditions: Our arrangement with the hiring attorney is not transferable without our written permission. The hiring attorney agrees to keep Stephen M. Horner, Ph.D. fully and immediately informed of every pending motion or hearing involving challenges to the presentation of Dr. Horner's opinions or analysis, including "Daubert" motions or hearings. The hiring attorney agrees to provide a vigorous defense against such challenges. A breach of this condition by the hiring attorney is grounds for immediate withdrawal from any and all cases involving that attorney or that attorney's law firm.

**Agreement:** **The hiring attorney agrees to the above conditions and fee arrangements by paying the required retainer or submitting materials to Stephen M. Horner, Ph.D. for analysis.**

*Rates may change without notice until case is accepted, and retainer is paid. Current rates can be guaranteed for three years by paying the current retainer.

Tax I.D. Number 74-2575880
