IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CROSBY MARINE TRANSPORTATION, LLC** § § § § § § § § § § § § § § § § § § § | |
| Plaintiff, | CIVIL ACTION NO. 4:23-cv-770 |
| V. | ADMIRALTY RULE 9(h) |
| **SOUTHWEST SHIPYARD, LP** | Judge Charles Eskridge |
| Defendant/Third-Party Plaintiff, | |
| V. | |
| **LYNN JONES, LLC** **LYNN R. JONES** | |
| Third-Party Defendants. | |

**DEFENDANT/THIRD-PARTY PLAINTIFF, SOUTHWEST SHIPYARD, LP'S,
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES</u>**

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW Defendant/Third-Party Plaintiff, Southwest Shipyard, LP, ("<u>Southwest</u>") by and through its undersigned counsel, and serves and files this, its Motion for Partial Summary Judgment on Damages, (the "<u>MPSJ</u>") pursuant to Federal Rule of Civil Procedure 56 and respectfully shows as follows:

## I.
## NATURE AND STAGE OF PROCEEDINGS

1. This is a maritime/admiralty matter involving a vessel in dry dock that caught fire during repair work.

2. On March 21, 2023, the Court entered its Scheduling and Docket Control Order (Dkt. 7). The Scheduling and Docket Control Order (Dkt. 7) established April 2, 2024 as the discovery deadline and May 2, 2024, as this matter's dispositive and non-dispositive motion deadline. It additionally established June 18, 2024 as the alternative dispute resolution deadline, July 18, 2024 as the deadline for the Joint Pretrial Order and August 20, 2024 for Docket Call. The discovery deadline has passed, and discovery has been completed.

## II.
## STATEMENT OF THE FACTS NECESSARY
## TO RESOLUTION OF THE MOTION

3. This motion for partial summary judgment is based upon an argument of the law. Therefore, there are no facts necessary for the resolution of the Motion. Undisputed facts that may be useful in the resolution of this Motion are listed in section IV, Statement of Undisputed Facts, below.

## III.
## SUMMARY JUDGMENT EVIDENCE

4. In support of its Partial Motion for Summary Judgment on Damages, Southwest offers the following evidence:

Exhibit "1" Certificate of Documentation for M/V CROSBY ENTERPRISE.

Exhibit "2" Agreement of Purchase and Sale for M/V CROSBY ENTERPRISE.

Exhibit "3" Documents Produced by the American Bureau of Shipping.

Exhibit "4" Marine Chemist Certificate #703-08408.

Exhibit "5" Temporary Work Order Dated July 17, 2022.

Exhibit "6" Plaintiff's Supplemental Answers to Defendant's Second Set of Interrogatories at 2.

Exhibit "7" Expert Report of James Quackenbos.

Exhibit "8" Deposition of James Quackenbos.

## IV.
## STATEMENT OF UNDISPUTED FACTS

5. There is no genuine dispute with respect to the following facts material to Southwest's Motion:

1) Crosby Marine Transportation, LLC ("Crosby") owns the Offshore Service Vessel M/V CROSBY ENTERPRISE.

2) According to its Certificate of Documentation, The M/V CROSBY ENTERPRISE, U.S.C.G. Official Number 562498, is a welded steel hulled vessel measuring at 135.7 feet long by 40 feet wide that was completed in 1974. *Exhibit 1. United States Coast Guard Certificate of Documentation, Crosby 0001 – 0002.* In June of 2008, Crosby Purchased the then-named M/V GODFATHER, U.S.C.G. Official Number 562498, from Jackson Marine, LLC for a purchase price of Five Million, One Hundred Thousand U.S. Dollars ($5,100,000.00). *Exhibit 2. Agreement of Purchase and Sale between Jackson Marine and Crosby, Crosby 0496 – 0501.*

3) By 2019, the Vessel and her engines were forty-four years old. Her U.S.C.G. Certificate of Inspection was no longer in force, and she was out of class. The vessel was considered to be laid up effective August 8, 2019, and tied up and cold stacked at the Crosby Marine and Repair facility in Houma, Louisiana. *Exhibit 3, ABS Documents, pp. 2-3.* The M/V CROSBY ENTERPRISE remained laid up until July of 2022, when she was towed from Crosby's facility in Houma Louisiana, nearly 300 miles to Southwest's floating drydock at Brady Island in Houston, Texas. Southwest's floating dry dock is located on the navigable waters of the Houston Ship Channel.

4) On or about July 17, 2022, Southwest issued a Temporary Work Order to Crosby for the work to be done by Southwest on the M/V CROSBY ENTERPRISE. *Exhibit 5, Temporary Work Order issued July 17, 2022.* Other than this document, there was not a written contract entered into between Southwest and Crosby for the work to be done on the M/V CROSBY ENTERPRISE.

5) On August 10, 2022, Marine Chemist. Lynn R. Jones of Lynn Jones, LLC, an independent contractor of Southwest, issued his Marine Chemist Certificate #703-08408 which, among other areas, certified the Vessel's No. 2 Fuel Tank as safe for Hot Work. *Exhibit 4. Marine Chemist Certificate #703-08408.*

6) On August 12, 2022, while one of Southwest's subcontractors was performing Hot Work in the Vessel's No. 2 Fuel Tank, a fire started when some cardboard boxes ignited in an adjacent space above the No. 2 Fuel Tank commonly referred to as the Common Head.

7) The ensuing fire caused damage to the Vessel.

8) Crosby owns 150 vessels in its fleet. *Exhibit 6, Plaintiff's Supplemental Answers to Defendant's Second Set of Interrogatories at 2*.

9) Crosby has alleged causes of action against Southwest under theories of Negligence and Breach of the Implied Warranty of Workmanlike Performance.

## V.
## FACTUAL AND PROCEDURAL BACKGROUND

6. On August 12, 2022, while the vessel M/V CROSBY ENTERPRISE (the "Vessel") was in Southwest's dry dock on Brady Island in Houston, Texas, the Vessel caught fire and suffered fire damage. The fire occurred when welding, or Hot Work, was being conducted in the Vessel's No. 2 Fuel Tank which had been certified as Safe for Hot Work by a Marine Chemist, Lynn R. Jones.

7. The Vessel's owner, Crosby Marine Transportation, LLC, ("Crosby"), filed suit against the Vessel repairer, Southwest Shipyard, LP ("Southwest") on March 1, 2023. Crosby's most recent Complaint is its Second Amended Complaint (Dkt. 58), filed on January 12, 2024. In its Second Amended Complaint (Dkt. 58), Crosby pleads causes

of action against Southwest for Negligence and Breach of the Implied Warranty of Workmanlike Performance.

8. On April 7, 2023, Southwest third-partied in the Marine Chemist, Lynn Jones, LLC and Lynn R. Jones, under Federal Rule of Civil Procedure 14 (c). (Dkt. 12).

## VI.
## STATEMENT OF ISSUES REQUIRING RESOLUTION

9. There are two issues in this motion for partial summary judgment.

10. First, under maritime law, when damages are being assessed for damage to a vessel, what is the appropriate way to calculate those damages.

11. Second, Plaintiff's claim for loss-of-use damages should be dismissed because Crosby has not met its burden of proof as it failed to account for the "fleet rule," and calculates its loss-of-use damages based off of an improper temporal standard and other vessels rather than charters of the subject vessel.

## VII.
## STANDARD OF REVIEW

12. On appeal, this Court's legal determinations are reviewed *de novo. Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir. 2003).

## VIII.
## SUMMARY OF THE ARGUMENT

13. In calculating damages in this matter for physical damage to the Vessel, the appropriate method is to determine the reasonable cost of repairs to place the Vessel in the same condition it was in prior to the incident then determine the Vessel's Fair Market Value immediately prior to the incident which caused damage to the Vessel. If the cost of

repairs exceeds the Vessel's Fair Market Value, then the vessel owner is only entitled to only the Fair Market Value of the Vessel. If, on the other hand, the cost of repairs does not exceed the Vessel's Fair Market Value, then the owner is entitled to the reasonable cost of repairs.

14. In calculating loss-of-use damages, the Plaintiff has a duty to show that it mitigated its damages by utilizing any available comparable vessels in its fleet for jobs that the subject vessel may have otherwise done. Once the Plaintiff has done so, the proper method of calculating loss-of-use damages is to view the historic daily profit rate of the Vessel under charter.

## VII
## LAW AND ARGUMENT

### A. *Physical Damages: Cost of Repair Must be Less than Fair Market Value.*

15. It is well settled that a contract to repair a vessel is maritime and oral contracts under maritime law are binding. *Operaciones Tecnicas Marinas SAS v. Diversified Marine Servs, LLC,* 658 Fed. Appx. 732, 738 (5th Cir. 2016).

16. A ship repairer potentially faces three sources of liability for repairs he performs on a vessel. First, it may be liable in contract for a breach of its expressly assumed obligations. Second, it may be liable for a breach of an implied warranty of workmanlike performance ("IWWP"). Third, it may be liable for the maritime tort of negligence. In this matter, the vessel owner has alleged causes of action against

Southwest, as the ship repairer, under theories of IWWP and the maritime tort of negligence.

17. To prevail on a claim of negligence under maritime law, the plaintiff must prove (1) a duty was owed by the defendant to the plaintiff, (2) the duty was breached, (3) the plaintiff suffered injury, and (4) a causal connection existed between the defendant's conduct and the plaintiff's injury. *Mylonakis v. M/T GEORGIOS M,* 909 F.Supp.2d 691, 710 (S.D. Texas 2012) (citing, *In re Great Lakes Dredge & Dock Co. LLC,* 624 F.3d 201, 211 (5th Cir. 2010)).

18. The IWWP does not make the ship repairer a guarantor of the work involved. The warranty requires the service contractor to perform his tasks with reasonable skill; therefore, the warranty is rooted in concepts of negligence. *Employers Insurance of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 763, n. 17 (5th Cir. 1989). The burden for establishing a breach-of-the-implied-warranty claim is indistinguishable from that for a negligence claim. The standard necessarily parallels a negligence standard. *Id.*

19. In admiralty cases, the substantive rules concerning damages do not generally differ from the common law; as a general proposition, courts award admiralty damages to make the injured parties whole. *Phillips Petroleum Co, v. Stokes Oil Co.,* 863 F,2d 1250, 1257 (6th Cir. 1988) (citing *Tug June S. v. Bordagain Shipping Co.,* 428 F.2d

306, 307 (5th Cir. 1969). However, making the injured party whole does not mean they have been made better off than they were before the incident.

20.     Whether, the cause of action is negligence or the implied warranty of workmanlike performance, the damages recoverable for damage to the vessel are the same. When a vessel is damaged in a collision or other marine casualty, the amount of recovery depends on whether it is deemed a total (or constructive total) loss or whether its partial damage justifies repair. *Gaines Towing and Transp., Inc. v. Atlanta Tanker Corp.,* 191 F.3d 633 at 635 (5th Cir. 1999). A vessel is considered a constructive total loss when the damage is repairable, but the cost of repairs exceeds the fair market value of the vessel immediately before the casualty. *Id.* In such a case, repair is not economically practicable and the market value of the vessel is the ceiling of recovery. *Id.* Damages for loss of use may not be awarded when the vessel is a constructive total loss. *Id.* When a damaged vessel is not a total loss, the owner is entitled to recover the reasonable cost of repairs necessary to restore it to its pre-casualty condition. *Id.*

21.     Crosby and Southwest may have a slight difference of opinion as to the cost of repairing the fire damage to the M/V CROSBY ENTERPRISE. They both generally agree that the repairs will cost in the neighborhood of between $4,493,293.00 and $5,038.293.00.  There is a wide gap between what Crosby alleges the Fair Market Value of the M/V CROSBY ENTERPRISE prior to the fire was and what Southwest does.

22.     At trial the Court will be called upon to determine not only the Fair Market Value of the M/V CROSBY ENTERPRISE, but also the reasonable damages that Crosby

is entitled to recover for physical damage to the vessel. The purpose of this motion is to establish, prior to trial, how damages will be calculated.

23. Based upon the above and forgoing, damages will be calculated by: first, determining the cost to repair the fire damage to the vessel; and second, determining what the Fair Market Value of the vessel prior to the fire was. If the Fair Market Value of the vessel prior to the fire is less than the cost of repairing the fire damage, then the Fair Market Value of the vessel prior to the fire is the cap on damages for the physical harm caused to the vessel. If, on the other hand, the cost of repairing the vessel does not exceed its Fair Market Value, then the cost of reasonable repairs is awarded for physical damage to the vessel.

**B.     *Loss-of-Use Damages: the Plaintiff Must Satisfy the Fleet Rule and Use the Vessel's Charter History to Establish Daily Profit***

24. The owner of a vessel damaged through the fault of another is entitled to an award for actual profits lost during the detention necessary to make repairs. *Bouchard Transp. Co. v. Tug OCEAN PRINCE*, 691 F.2d 609 (2d Cir. 1982). "The unquestioned general rule governing the award of detention damages is that 'demurrage will only be allowed when profits have actually been, or may reasonably supposed to have been, lost, and the amounts of such profits is proven with reasonable certainty.'"[1] *Crain Bros., Inc. v. Duquesne Slag Prods. Co.*, 273 F.2d 948, 950 (3d Cir. 1959) (quoting *The CONQUEROR*, 166 U.S. 110, 125 (1897)). "The use of substitute vessels to replace a damaged vessel is a form of mitigation of damages by a shipowner." *Delta S.S. Lines,*

---

[1] The terms for "loss of use," "detention," and "demurrage" damages are used interchangeably.

*Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 1007 (5th Cir. 1984), *amended on reh'g*, 753 F.2d 378 (5th Cir. 1985). When a plaintiff claiming loss-of-use damages has a fleet of vessels and is able to use other vessels in its fleet to perform the work that would have been done by the disabled vessel, the plaintiff has not suffered a compensable economic injury. *Bolivar Cty. Gravel Co. v. Thomas Marine Co.*, 585 F.2d 1306, 1309 (5th Cir. 1978) (discussing *Brooklyn E. Dist. Terminal v. United States*, 287 U.S. 170 (1932)). When the plaintiff has substitute vessels in its fleet at its disposal, the plaintiff must show that the "substitute vessels would have been hired" for other jobs and could not have replaced the work of the disabled vessel before it can be awarded lost profits for the substitute vessel's use in the job(s) that the incident prevented the disabled vessel from completing. *See Domar Ocean Transp., Ltd. v. M/V ANDREW MARTIN*, 754 F.2d 616, 620 (5th Cir. 1985).

25. Here, Plaintiff has identified one hundred and fifty vessels in its fleet, including the CROSBY ENTERPRISE. See *Exhibit 6, Plaintiff's Supplemental Answers to Defendant's Second Set of Interrogatories at 2.* However, Plaintiff has refused to provide information regarding whether other vessels in its fleet were otherwise employed during the CROSBY ENTERPRISE's detention period or whether the other vessels could have performed the jobs that the CROSBY ENTERPRISE otherwise would have performed. See *id.* Accordingly, Mr. Quackenbos' expert report does not discuss whether Plaintiff mitigated its damages by utilizing sister vessels in its fleet. See *Exhibit 7, Expert Report of James Quackenbos.* Further, he testified in his deposition that he did not take into account any vessels that were laid up and that he did not know whether or not

Plaintiff used any of the sister vessels in its fleet to fulfill any of the jobs that the CROSBY ENTERPRISE would have been capable of performing during the detention period. See *Exhibit 8, Deposition of James Quackenbos at 79:7-13; 95:2-9; 96:6-11.*

26. Furthermore, where a damaged vessel is under time charter, the rate under the charter party is used to establish the amount the vessel would have earned during the detention period, from which expenditures are subtracted to establish a daily profit rate for the vessel. *See The YAYE MARU*, 274 Fed. 195 (C.C.A.4 1921).

27. Here, Mr. Quackenbos' based his calculations of the Plaintiff's purported loss-of-use damages on a thirteen-month period of time over twelve of Crosby's 150 vessels by horsepower rather than based on any actual time or voyage charter price for any period. See *Exhibit 7, Expert Report of James Quackenbos at 6, internal Exhibit C*; *Exhibit 8, Deposition of James Quackenbos at 76:18-84:7*. Mr. Quackenbos stated that this was the information given to him by Crosby to make his report, showing that he did not have access to the full information necessary to arrive at a reliable opinion. See *Exhibit 8, Deposition of James Quackenbos at 77:18-78:10*. Therefore, under the applicable general maritime law, Plaintiff has not met its burden of proving that it is entitled to loss-of-use damages and its claim for the same should be dismissed.

## VI.
## CONCLUSION

28. For the reasons stated above in this motion for partial summary judgment, when evaluating physical damages to a vessel allegedly caused by a ship repairer, the correct way to assess the damages is to: first, determine the cost to repair the damage to

the vessel; second, determine the Fair Market Value of the vessel prior to the incident giving rise to the claim—here, a fire. If the cost of repairs exceeds the Fair Market Value, then the cap on damages for the physical damage to the vessel is the vessel's Fair Market Value prior to the fire. If the cost of repairs does not exceed the Fair Market Value, then the damages awarded for the physical damage to the vessel will be the cost of repairs.

Additionally, when evaluating loss-of-use damages, fleet-owner plaintiffs like Crosby must show that they are entitled to this measure of damages by first showing that it mitigated its damages by using idle sister vessels to perform work that otherwise would have been performed by the subject vessel, and second by proving loss-of-use damages calculations through previous or subsequent charter hires of the vessel. Therefore, Defendant Southwest Shipyard, LP respectfully requests this Court to grant its Motion for Partial Summary Judgment in full, determine the appropriate analysis to award physical damages to Plaintiff, and dismiss Plaintiff's claim for loss-of-use damages.

Respectfully submitted,

*/s/ Thomas O. Deen*
Thomas O. Deen
State Bar Number: 05713780
Federal ID: 1738
1001 McKinney St., Suite1400
Houston, Texas 77002
Telephone: (713) 588-0446
Fax: (713) 574-2941
tdeen@sbsblaw.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT SOUTHWEST SHIPYARD, LP**

OF COUNSEL:

**SCHOUEST, BAMDAS, SOSHEA & BENMAIER, PLLC**

**Carra Miller**
State Bar Number: 24103937
Federal ID: 3162385
cmiller@sbsblaw.com
1001 McKinney St., Suite 1400
Houston, Texas 77002
Telephone: (713) 588-0446
Fax: (713) 574-2941

And

**Jeff Peuler**

LA Bar No.: 30017
jpeuler@sbsb-eastham.com
 One Canal Place
365 Canal St., Ste. 2450
New Orleans, LA 70130
504-561-0323 – Telephone
*Pro Hac Vice*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing Defendant/Third-Party Plaintiff, Southwest Shipyard, LP's Motion for Partial Summary Judgment on Damages, based upon word-processor register, and not including the case caption, table of contents, table of authorities, signature block and certificates is 2,940 words.

                                                     /s/Thomas O. Deen
                                                     Thomas O. Deen

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response to Trailer Bridge's Motion to Quash Trailer Bridge, Inc.'s Subpoena was served upon all known counsel of record, by facsimile and/or email and/or electronically through the Court on this the 2nd day of May 2024.

                                                              */s/Thomas O. Deen*
                                                              Thomas O. Deen