United States District Court
Southern District of Texas
**ENTERED**
September 06, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CROSBY MARINE TRANSPORTATION LLC, | § § § | CIVIL ACTION NO 4:23-cv-00770 |
| Plaintiff, | § § § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| SOUTHWEST SHIPYARD, LP, Defendant. | § § § § | |

### OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT ON LIABILITY

The motion for partial summary judgment by Plaintiff Crosby Marine Transportation, LLC, to find Defendant Southwest Shipyard, LP, solely liable, as between the two, in this action is granted. Dkt 39.

1. Background

Crosby Marine sent its vessel, the *M/V Crosby Enterprise*, to Southwest for repairs. Dkt 39-1 at 9. A fire broke out aboard the vessel and caused substantial damage on August 12, 2022, while it was at Southwest's shipyard. Dkts 39 at 5 & 39-2 at 3. The vessel wasn't insured at the time. See Dkts 43 at 13–14 & 43-9.

Bernard Diaz is the executive vice president of health, safety, and environmental operations for Southwest. He conducted an investigation of the accident and wrote a report. Dkt 39-2. The report found that the fire started in the space directly above the main deck starboard crew head, directly above a fuel tank. While welding was being performed on the deck drain, material stored in the crew

head caught fire from sparks through the deck drain, and the fire spread throughout the vessel. Id at 4.

The report also noted that, prior to the fire, a Marine Chemist Certificate had been issued designating the area safe for welding, also known as *hot work*. The certificate instructed Southwest to "maintain fire watch, charged fire hose and fire extinguisher, in way of repairs." Id at 4. But contrary to this instruction, the report found that a trained fire watch wasn't assigned to the job, and the only charged water hose was located outside the area where work occurred. Id at 14. Interviews with the crew confirmed that a fire watch wasn't maintained in the work area, and that a job safety analysis wasn't filled out that day. Id at 11.

The report listed the following factors as contributing to the fire:

- Flammable/combustible materials not removed prior to start of hot work
- The supervisor failed to provide adequate direction prior to job assignment and the commencement of hot work operations.
- Fire watch was not assigned per MCC directions
- No review of MCC conducted prior to commencement of hot work operations

Id at 4; see also id at 6–7.

The report also has a heading that asks, "Who or what caused the fire?" In answer, the report states:

> Santos Perez (fitter) and Jesus Hernandez (tacker) were assigned to cut and fit the drainage pipes on the Starboard side voids of the M/V Crosby Enterprise. Mr. Perez cut the drainage pipe flush from the bell reducer that leads into the Head. Old boxes were stored inside the Head and were not removed when hot work was being conducted.

2

Id at 8. The report also noted several corrective actions that Southwest planned to take. Id at 4, 6–7.

Diaz was later designated as Southwest's corporate representative for deposition in this action. He testified that "Southwest doesn't disclaim responsibility for those contract employees" (such as Perez), who were involved in the fire. Dkt 39-1 at 47. And he confirmed the findings in his report, including involvement of the contract workers and the finding that Southwest didn't comply with OSHA rules and regulations. Dkt 39-1 at 5, 23. Diaz also confirmed that his conclusions about the cause of the fire and who was responsible hadn't changed since the investigation. Id at 25–26. Nor had he or anyone at Southwest attempted to further investigate. Id at 41. And he explicitly agreed with assertion that "Southwest Shipyard is solely responsible for the casualty." Id at 26.

Also deposed in this action was Southwest's president and CEO, Scott Theriot. He testified that, based on the report by Diaz, he believed Southwest's liability had been determined. Dkt 39-3 at 10.

Based on this evidence, Crosby Marine requests partial summary judgment as to liability, with a finding that Southwest is solely liable as between it and Crosby Marine. Dkt 39 at 24.

2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

### 3. Preliminary issues

Southwest argues that the motion for summary judgment is premature because discovery wasn't complete when Crosby Marine filed its motion. Dkt 43 at 18–19. That argument is now moot and/or waived. Discovery closed on April 2, 2024, with hearing on the motion on April 30, 2024. Southwest didn't there or after present any newly discovered evidence to support its argument. Dkt 73. The motion is thus fully briefed and appropriate for decision.

Southwest also objects to the admissibility of two of Crosby Marine's exhibits, being (i) the deposition of Diaz, and (ii) the post-incident investigative report by Diaz. See Dkt 43 at 5–6, 16–18. The objections are overruled.

Southwest argues that both exhibits are inadmissible under Rule 407 of the Federal Rules of Evidence, which prohibits use of subsequent remedial measures as proof of negligence as follows:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.

The Advisory Notes indicate that such evidence should be excluded, thus "encouraging people to take, or at least not discourage them from taking, steps in furtherance of added safety." Federal Rules of Civil Procedure Advisory Notes, 1972 Proposed Rules.

The Fifth Circuit holds that Rule 407 is not "applicable to investigations, which by themselves do not make the accident less likely to occur." *Brazos River Authority v GE Ionics, Inc*, 469 F3d 416, 431 (5th Cir 2006). It is the "actually-implemented" changes which increase safety and make the accident less likely to occur and thus are excluded under Rule 407. Ibid; see also *Novick v Shipcom Wireless, Inc*, 946 F3d 735 (5th Cir 2020). As such, the Fifth Circuit finds that an investigation itself is admissible, so long as remedial measures actually implemented are redacted. See *Brazos River Authority*, 469 F3d at 431.

The report here at issue is an investigation focused largely on determining the root cause of the fire. This means that Rule 407 isn't directly applicable. To the extent that it describes remedial measures Southwest took or may take as a result of the investigation, those aren't considered in resolution of this motion, and Crosby Marine will be ordered to redact them from the report at trial.

Southwest also argues that the exhibits are inadmissible under Rule 403, which allows the court to exclude evidence "if its probative value is substantially

outweighed by a danger of . . . unfair prejudice." Southwest asserts that these exhibits "will be highly prejudicial to Southwest because it would be using a procedure designed to improve safety to prove negligence or culpability." Dkt 43 at 18. This is largely redundant to argument under the more-specific provision of Rule 407. And again, admitting the investigative findings but not any as-implemented changes will ensure that Southwest isn't prejudiced by its good-faith steps in furtherance of added safety.

  4. Analysis

Crosby Marine states causes of action against Southwest for maritime negligence and breach of warranty of workmanlike performance.

As to maritime negligence, "a plaintiff must demonstrate that there was [1] a duty owed by the defendant to the plaintiff, [2] breach of that duty, [3] injury sustained by the plaintiff, and [4] a causal connection between the defendant's conduct and the plaintiff's injury." *GIC Services, LLC v Freightplus USA, Incorporated*, 866 F3d 649 (5th Cir 2017) (citations omitted). As to breach of an implied warranty of workmanlike performance, "[t]o recover from a contractor . . . a shipowner must prove that the contractor breached the warranty, and that the breach proximately caused the injury." *Butterfly Transportation Corp v Bertucci Industrial Services LLC*, 351 Fed Appx 855, 858 (5th Cir 2009). "More specifically, the essence of a contractor's obligation is the duty to perform the contract's obligations 'properly and safely.'" Ibid (citations omitted).

By their elements and terms, the causes of action nominally state different requirements. But the Fifth Circuit holds that the burden for establishing a breach of warranty of workmanlike performance claim is "indistinguishable" from establishing a maritime negligence claim. *Operaciones Tecnicas Marinas, SAS v Diversified Marine Services, LLC*, 658 Fed Appx 732, 738 (5th Cir 2016).

The parties don't dispute that, as the contractor, Southwest had a duty to perform the contract's obligations properly, safely, and competently. See Dkts 39 at 7 & 43. And it's clear that Crosby Marine suffered injury when the fire damaged its vessel. The dispute is whether a breach of Southwest's duty to actually perform properly, safely, and competently was the cause of the fire.

Crosby Marine presents substantial evidence—from Southwest's own investigative report, along with the testimony of its author and of Southwest's CEO—that Southwest's breach of duty caused the fire. In short summary, it asserts (i) hot work done by Southwest employees indisputably started the fire, and (ii) Southwest specifically neglected to follow safety instructions in the Marine Chemist Certificate, thereby creating dangerous conditions that allowed the fire to start and spread. See Dkt 39-2 at 11.

This evidence thus makes clear that Southwest's breach of its duty to perform its obligations safely was, at the very least, a contributing cause to the fire.

To avoid summary judgment as to its *sole* liability as between it and Crosby Marine, Southwest argues that there are genuine issues of material fact as to whether the fire was caused by an entity outside of Southwest's control. Specifically, it contends that either or both of Crosby Marine or third-party contractors working aboard the vessel were contributing causes to the fire.

### a. Potential liability of Crosby Marine

Southwest argues that Crosby Marine (i) breached a duty to warn Southwest of the combustible nature of the material in the crew head, and (ii) still had some custody and control of the vessel at the time of the fire. Dkt 43 at 18–19. Neither theory presents a genuine dispute of material fact with respect to the potential liability of Crosby Marine that precludes summary judgment.

*As to whether Crosby Marine breached a duty to warn,* Southwest relies on *Magee v Bayou Teche* for the general proposition that a shipowner has a duty to warn the ship

7

repairer of known hazards. 548 F Supp 270, 274 (ED La 1982). But Southwest oversimplifies the duty of shipowners, as to which *Magee* states in full:

> In turning a vessel over to a repairman, the shipowner's duty is to exercise ordinary care under the circumstances to have the vessel in such condition that an expert and experienced repairman will, by the exercise of reasonable care, be able to carry on the repair operations with reasonable safety to persons and property. The shipowner must also warn the repairman of any hazards on the ship that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the repairman in the course of his repair operations and that are not known by the repairman and would not be obvious to him if reasonably competent.

Ibid. The facts of *Magee* instruct that Crosby Marine complied with this duty and thus wasn't a contributing cause of the fire.

In *Magee*, as here, a fire broke out and damaged a barge while it was under repair at a shipyard. Id at 272. The question at hand was determination of liability for the fire as between the shipfitter, the owner of the barge, and the marine chemist. The owner hired the shipfitter to replace a part and repair a crack in the barge. Id at 272. Before the shipfitter performed that repair work, a marine chemist inspected and issued a certificate indicating the work area was "safe for fire." Ibid. The shipfitter made the requested repairs without incident. Id at 273. But it then proceeded to make additional, unrequested repairs involving hot work on insulation, which caused the insulation to set fire. Ibid. The marine chemist wasn't informed of this work. Ibid.

The court found that the barge owner was free from liability because it didn't breach its duty to warn about

hazardous conditions, and it delivered the barge in a safe condition when it relinquished custody to the ship repairer. After that, the barge owner had no duty to discover "what risks might be encountered" during repairs. Id at 274. Instead, once the barge was safely delivered, the barge owner had a right to rely on its experts—the shipfitter and the marine chemist—with regard to any dangers they encountered in repairing the vessel. Ibid. That right exists because federal regulations requiring a Marine Chemist Certificate "make clear that the burden for the safety of repairs involving hot work aboard tank vessels is placed upon the vessel repairer and the marine chemist." Id at 274–75. And once the marine chemist certified the area as "safe for fire," the barge owner "could not have known that such hot work would be hazardous." Ibid. As such, the court determined that the barge owner was not a contributing cause of the fire. Id at 274.

So, too, here. Crosby Marine delivered the vessel to the Southwest shipyard in a safe condition. That's where its duty ended, given that there's no evidence to suggest that—in the words of *Magee*—any combustible material "that would likely be encountered by the repairman in the course of his repair operations" was "not known by the repairman and would not be obvious to him if reasonably competent." 548 F Supp at 274. Instead, the burden for safety shifted to the experts—being Southwest (as the vessel repairer) and Lynn Jones (as the marine chemist)—when the repairs involving hot work in the crew head began. It was Southwest and Lynn Jones who then were aboard the ship inspecting and performing the work and who thus had the duty to evaluate fire hazards. And once Jones certified the area as safe for hot work, Crosby Marine couldn't have known that it would be hazardous for hot work to occur there. Id at 274–75.

On the whole, *Magee* thus instructs that any duty upon Crosby Marine ceased when it delivered the vessel safely to Southwest, the area was certified as safe by the marine chemist, and repair work began. This means in turn that

9

Crosby Marine wasn't a contributing cause of the fire due to any putative duty to warn.

*As to whether Crosby Marine potentially has some share of liability because it had some custody and control of the vessel at the time of the fire,* Southwest asserts that three to four Crosby Marine personnel were aboard the vessel on the day of the fire. See Dkts 43-4 & 43-5. But it neither presents evidence that Crosby Marine personnel were in any way involved in the fire, nor cites any authority showing that mere presence of such personnel on the vessel is enough to withstand summary judgment as to sole liability in this context.

In short, Southwest fails to explain how the mere presence of such employees is sufficient to establish Crosby Marine owed any duty. Instead, it was Southwest who had primary custody of the vessel and was in charge of the repairs that indisputably led to the fire. And so, no genuine dispute of material fact is presented that could conceivably apportion any blame to Crosby Marine as a contributing cause of the fire.

        b.   Potential liability of Southwest contractors

Southwest likewise fails to establish a genuine fact issue that would preclude summary judgment as to any potential liability of its contractors. As Southwest's corporate representative, Diaz explicitly conceded at deposition that "Southwest doesn't disclaim responsibility for those contract employees," that "for purposes of [the] investigation, [Southwest] consider[ed] them to be employees of Southwest," and that they were acting on Southwest's behalf. Dkt 39-1 at 47. Southwest submits no other evidence calling into question this testimony. And it has admitted in this litigation that it retained the right to control and direct the activities of its contract welders. See Dkt 45 at 7.

As such, and again, no genuine dispute of material fact is presented to forestall a finding of sole liability here on behalf of Southwest, as between it and Crosby Marine.

5. Conclusion

Crosby Marine has demonstrated beyond any genuine dispute of material fact that Southwest breached its duty to perform its repair obligations safely, properly, and competently, thus causing significant injury to Crosby Marine's vessel. Southwest is otherwise unable to establish any genuine issue as to a potential share of liability being assigned to Crosby Marine or the contract workers.

The motion for partial summary judgment by Crosby Marine Transportation, LLC, with respect to liability is GRANTED. Dkt 39.

It is hereby DETERMINED that Defendant Southwest Shipyard, LP, is liable in negligence and breach of the warranty of workmanlike performance to Plaintiff Crosby Marine Transportation, LLC, for causing the fire that occurred aboard the *M/V Crosby Enterprise* on August 12, 2022.

This ruling is WITHOUT PREJUDICE to the right of Third-Party Plaintiff Southwest Shipyard, LP, unless and until determined otherwise, to put on evidence at trial of the alleged fault of Third-Party Defendants Lynn Jones and Lynn Jones, LLC, and their alleged responsibility to it for contribution and indemnity. See Dkt 12 (third-party complaint by Southwest).

SO ORDERED.

Signed on September 4, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge